Your Honor, this case opens off at 2-16-0902. People of the State of Illinois Defensive Athlete, E. James Haubrich, defendant of felons. Arguing on behalf of the Defensive Felons, Mr. Andrew N. Smith. Arguing on behalf of the Defensive Athlete, Mr. Steven J. Russo. Mr. Smith. Thank you, Your Honors. May it please the Court, Counsel, my name is Andrew Smith and I represent James Haubrich in this case. The issue here is whether any person could reasonably believe that the State proved beyond a reasonable doubt that the defendant's statement was a literal attempt to gain information. Even though the State's star witness disputed that this is a literal question and the State's theory defies common sense. The only reasonable inference here was that James was accusing Nelson of being a snitch or sending Nelson a message not to snitch. This is intuitively understood. It was intuitively understood by Nelson when he testified at trial. It was intuitively understood when right after the offense he told officers that Haubrich accused him of being a snitch. It was intuitively understood by the prosecutor at arraignment when he called the statement an accusation. Things understood. Didn't Nelson testify that he understood the defendant to be asking him a question, but he did not think he was threatening him for information? Correct. Isn't the jury entitled to believe portions of testimony and not believe other portions of testimony, even from the same witness? Sure, but this is not in conflict. Well, but aren't, isn't the jury also entitled to look at the surrounding circumstances and in this particular case, the fact that there were two shots fired at the time the questions were asked? The shots fired by the defendant at the victim? That would be the threat. And that he had to wrestle the gun away from him in order to leave? So that, what would that have to bear on his... The fact that this was not a rhetorical question, that it was actually further intimidation to get him to answer the question. So I want to be clear on this point because that is not established in the record. The record said that James said, you snitching on me, and then pulled out the gun and fired the shots. It was all in one motion. There is not a pause here where he waits to see if he's going to answer the question and then fires the shot. And let's just think about this in terms of what a reasonable person would think in this situation, all right? James knew the answer to his question. He knew that he was not tricking on him. So is that what you're saying? No, I'm saying that James knew the answer that Nelson was going to give before he asked, made the statement. So therefore, the purpose cannot be to gain information. How do we know that? There's nothing in the record that tells us that. Well, other than Nelson saying that it was not a request for information, we know this because common sense says that unless you have a death wish, you're not going to answer yes to the question, are you snitching at me with a gun? I know you're trying to suggest that no reasonable juror could find the defendant guilty. That's your argument, right? Right. And that's a common standard. The victim bought cocaine earlier in the day, correct? Correct. And then he comes back for a second purchase, correct? Correct. And I'm sure you're familiar with undercover operations. Multiple small purchases are very common. And oftentimes multiple purchases in small amounts from the same individual on the same day can give rise to suspicion. Why are you back here again? Right, right, right. So a reasonable common sense juror could certainly believe that when the defendant said, why MFR, why are you tricking on me? You're tricking on me, MFR, and then shoots, not to kill but to threaten for a response back. Why couldn't a juror reasonably conclude that that is a threat to intimidate to get information from? Because the information would have no use. Why? This is not a court of law where he needs to prove that he's snitching on me. No, it's a street law. Okay, well, street law, if you know street law, they don't wait to find out if the person is truly snitching. They don't go before a snitch committee and say, hey, look, we've got a confession here. He's actually a snitch. He's made up his mind. That's the point. He believes that he's snitching. Whether he says yes, no, maybe is completely unimportant. When I was a prosecutor, we had an interstate drug trafficking. And we had a person wearing a wire. And the Russian mafia, a member of the Russian mafia, put a gun in the mouth of a truck driver and asked him basically the same question. And you think that he wanted to know before he pulled the trigger? Right. So that he, for his own watches? He asked the same question. But my point is that that guy, if you're putting a gun in someone's mouth, you make up your mind that that guy's a snitch. Are you disputing that that was not an act of intimidation? Under the law, if the question is, is he trying to find out if he's a snitch? No, because he's made up his mind that that guy is a snitch. She didn't kill him. That man lived. So explain to me what happened. The point is that a reasonable jury could conclude. You don't agree that a reasonable jury could conclude that that was an act of intimidation? Under the charge of this offense, the intimidating act is to gain information. What was the shooting for? What was the purpose of shooting? As I said, the shooting is to say, do not snitch on me, and you better not snitch on me. If that had been charged, we'd be in a different situation. But it defies common sense. The testimony was that Mr. Nelson took it as a, he understood it as a question, not a directive. Correct. Asked in a direct manner, isn't this a question? Correct. By the prosecutor, he said, yes, it's a question. When asked openly whether he viewed this as a request for information, he said no. So that is a clarification of the state's direct question. They know they have to get that out, and they have to directly. But that's not determinative, is it? I mean, under Peterson, that's a factor to consider, but it's not determinative what the victim feels. Certainly, it's not determinative. So you have some testimony that says, yes, it's a question, and then you have other testimony that says, I didn't think he was looking for information. I think Justice Burkett asked this earlier. Can't the jury say, I believe in the question part, not the other part? They're not inconsistent. It's a rhetorical question. He knew that it was rhetorical, and that's why he said it was not a request for information. So this is not a, there's nothing conflicting to determine. And I agree that Nelson's saying that the state did not prove their case is not determinative. But what really supports this is that intuitively the state's theory does not make sense. Because no one would say yes to this question, and James would know that before he asked it. Well, but the defendant could have, we know he was intoxicated. He could have unreasonably thought that he could get Nelson to answer this question, especially if he scared him and threatened him with the gun. So that's possible. It's not reasonable to believe that someone's acting unreasonably unless we know, unless we know that there's reason to believe he'd be acting unreasonably. It's intoxicated. That is a leap. We know he was selling drugs. I don't know if we know for sure that he was doing drugs, but we certainly know he was intoxicated. So that means that he's misinterpreting rhetorical questions? No, maybe he's asking a question to which someone else might not think they could get an answer, but because of the state of mind he was in, he did think he could get an answer from Nelson. I think that's a bit of a leap, too. Well, I'm not sure it's any more of a leap than the defense is asking. To say that because someone's drunk that, therefore, they're asking unreasonable questions. And there's no basis to support it, and Nelson disputes it. And so we have to hold the state to beyond reasonable doubt still. That standard has not gone out the window on appeal. You agree that you can't have intimidation for asking a question that you're forcing an answer to? Correct. So if you're forcing out an answer. Let me give you a great example, which you may not be aware of because you're probably too young. But when I was reading this case, I thought immediately of Marathon Man. You ever see Marathon Man? Yeah. Is it safe? Yeah. Is it safe? Was that intimidation? Wait, I don't remember the exact situation. Well, the exact situation is the Nazi dentist is drilling into the guy's teeth and asking if it's safe. He's asking about diamonds. He's asking whether the diamonds are safe. Basically, where are the diamonds, he's asking. That would be a great example of intimidation. That information would be useful. It would be like starting someone with the code to a safe or what is going to happen to Times Square in two hours. Where's the bomb? That information is useful. There is no reason why James cares about his answer. He does not need to satisfy his own conscience. There's not due process here. It's not like a court of law where he needs to come before a committee and convince them that he is a snitch. At this point, he's made up his mind. He believes the guy is a snitch, and he believes it because he came and sold drugs to him two hours earlier. He's not going to believe anything he says based on that point. He wants to send him a message, don't snitch on me. Had that been charged, it might be a different matter, but it defies common sense that he cared in any way about this answer. So you're suggesting the state should have indicted it both ways, intimidation for causing him to perform an act or not causing him to not perform an act, which is to inform. They should have pled it that way. That would have been intimidation. It may be more difficult for me, but the jury would, of course, have to find. I think the state, the prosecutor. Well, he shot at him for some reason. Right. So I think the prosecutor was worried here, and he said this at closing. He called the statement a little ambiguous, and they didn't know what they could do with it. And I just want to point out, ambiguous is not beyond reasonable doubt. And we have to not only is Nelson saying directly this was not a request for information, completely undermining how can you get that type of clear, explicit testimony in a trial, but it also defies common sense. I mean, your arguments, you know, just kind of take me back to a trial court argument. And our real issue here, the real issue for the whole case is, I mean, if the three of us were hearing this case individually as trial court judges, as fact finders, we may buy your argument. But, I mean, this is totally different. I mean, we have to see whether a rational jury could have bought this. Right. Exactly. Because you're saying the jury in this case was irrational. I'm saying, as the Supreme Court has said, rational people act irrationally. And it is this Court's duty to uphold only reasonable verdicts. The jury system is a great system. It is not an infallible system. On such a minor point such as this can easily be lost in a jury trial, especially when the trial counsel did not make the argument because they went with a different theory. So it allows the State to expand on something that's not disputed. But it is this, just so guilty verdict is not extinguished beyond a reasonable doubt and appeal, that standard still applies, and it's this Court's duty to uphold that standard. And if there was a reasonable interpretation, we would not be here. This is just not reasonable. It's not reasonable to expect anybody to say yes to that question unless you want to be hurt. And James would know that. Therefore, if you don't say yes, I mean, is it him shooting at the ground and saying, are you snitching on me in order to get him to say yes or in order for him to simply answer the question, yes, no? I mean, he's just accusing me of being a snitch. I mean, he doesn't care about that. I guess the point is he knows that the answer is not going to in any way increase his knowledge. Well, how do we know? There's no testimony from him. The defendant did not testify. Well, if he did not testify, why would we be enforcing this? Well, you're saying what was in his mind. Based on what Nelson said, what was in his mind and what a reasonable person would do. Well, what Nelson testified to what was in Nelson's mind, not what was in the defendant's mind. And you're mixing those two together. I'm saying Nelson was interpreting the situation intuitively. Right. And that is very... That does not tell us what was in the defendant's mind, correct? But it is very strong evidence. Would you agree that what Nelson testified to is not testimony as to what was in the defendant's mind at the time he shot? It is strong evidence of what's in his mind. How is that? People testify about others' intent. That's how we find out what determined intent. Unless you have an admission or a statement from the accused as to what was in his or her intent at the time he or she performed a certain act, intent is drawn from circumstantial evidence. Would you agree to that? In some circumstances. Sometimes it's found in admissions, like you said. Or confessions. Or confessions. Here, I'm not saying it's, you know, definitive proof. I'm saying that it's extremely strong evidence. And it matches what a reasonable person would interpret to be. And we have to hold beyond reasonable doubt. That does not go out the window. I appreciate it. Thank you. You'll have time for rebuttal. Thank you. Okay. Mr. Lupa. Thank you. Good morning, Your Honors. And may it please the Court. My name is Steven Lupa, and I'm an assistant state's attorney in DuPage County. And I'm here today on behalf of the people of the state of Illinois. The defendant takes the uncompromising position that only his interpretation of the facts is supported by the evidence. He says that he intended to accuse the victim of being a snitch and that there is no evidence to the contrary. But as the people acknowledge at page 11 of their brief, the defendant's explanation may be one possible perspective on the evidence. But the people presented a different perspective. We presented evidence that the defendant wanted and intended to gain information from the victim. And ultimately, that is the determination for the jury to make, whether the defendant intended to gain information when he asked the defendant the question. And in this case, they agreed with the state's perspective, and that should carry the day. Now, I know the Court is familiar with the standard overview here. I'm not going to belabor that point, other than to say that at this point, the Court should view the evidence in the light most favorable to the state and uphold the verdict if any rational trier of facts could find the elements of the offense beyond a reasonable doubt. And that, of course, is the Collins standard. And I also want to reiterate that it is the prerogative of the jury to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. How do you view how Peterson affects this case and the holding of that case? Judge, the Peterson case involved a threatening letter that was sent to a judge to kill the judge if he did not reverse a decision. And I know that Peterson talks a little bit about the victim's intent and how the victim viewed the threat. But, Justice Burke, as you noted during opposing counsel's argument, that is just one factor that should be considered among the totality of the circumstances. And here, applying the law to the facts, certainly we have the victim's testimony, but we also have additional evidence which supports the state's version of the events. And through the defendant's words and actions, I think it's clear that he was seeking information. And I think the most compelling, the strongest evidence on that point is his own words when he asks the victim, are you tricking on me? This is undoubtedly a question. The trial court held as much when it was ruling on the motion for a new trial. At page 1283 of the record, the trial court says, that was a question. It wasn't a statement. He was trying to elicit information which was, are you ratting me out? Are you working with the police? Could it be rhetorical? Maybe that's one perspective. Why didn't the state and defense counsel argue this, that it would have been a much better charge if you had alleged that he was intimidating him to prevent him from being an informant or informing or tricking on him? That certainly could have been one way we charged the case. Obviously, we did not proceed in that fashion. But the existence of a stronger count or a different count does not nullify or weaken the strength of an alternate theory. Sure, we could have charged him with other offenses, but that doesn't undermine the evidence with respect to the theory that we proceeded on here. Now, there was also argument about the victim's testimony. And certainly, we acknowledge that the victim testified that he didn't believe that the defendant was threatening him for information. And we're not shying away from that fact. We can see the victim did testify that he didn't think the defendant was seeking information. But as Your Honor has noted, there is conflicting testimony on this point. And counsel argues that it's not really conflicting. I would submit it was. I'm sorry. The victim testified at page 803 that he understood the defendant to be asking a question. What is a question if not a request for information? It was a question. And in addition to understanding the defendant to be asking a question, the victim testified that he felt threatened for his life. And that's at page 806. Now, when you couple those two portions of this testimony together, it is absolutely reasonable to infer that the victim thought that the defendant was threatening him because he wanted an answer to that question. It is certainly a reasonable inference from the evidence. I also talked in my brief about the actual firing of the shots. I just want to reiterate that the defendant was two to three feet away from the victim when he pointed a revolver at him. This was point-blank range. And from such a short distance, if the defendant intended to accuse or retaliate against the victim for being a snitch, he could have chosen his target. He could have caused severe bodily harm. He could have killed him if he wanted to. But he chose a nonlethal target. He pointed the gun toward the ground, and he fired two shots into the floor. And I think a reasonable mind could infer that the defendant intentionally missed. And I would submit he did so for a reason, because he wanted to scare the victim. And he wanted to scare the victim into answering the question. Scare him into answering the question could also be a warning shot. Of course, absolutely. That this is what will happen if you do snitch. So it could be both, correct? It certainly could be both. And I know that the defendant argues that, and certainly that is one position, but it does not undermine the other position. It does not make it any less reasonable where the jury has the duty to draw inferences from the evidence. Your Honor, just briefly to address the argument that the defendant was talking about this morning, and I know he also mentioned it in his brief, he argues that, well, it was an intimidation because the information would have had no use to the defendant. And, Your Honor, I would submit that that's just not true. I think that a reasonable juror could infer that. And stepping back, that's not the standard, whether the information would be useful to the defendant. It's just whether, in this case, whether he was seeking information from the victim. But regardless of that, the defendant argues that the information would have no use to him. But that's certainly not true. And I raised a couple of possibilities in my brief. Maybe the defendant wanted to know who he was working for. Are you working for this department, that agency? Are you working for another drug dealer? And maybe that would have been the next question. But, of course, we don't know that because Nelson grabbed the gun from them, and they grabbed the gun from him, and he engaged in a struggle. But that information may have been useful to him, insofar as he would have then been able to identify who he was snitching for and perhaps use that information to evade the authorities. So, Your Honors, for all the reasons that I just mentioned and for all the reasons stated in my brief, unless there are any additional questions, I would ask that this Court affirm the judgment below me. Thank you. Thank you all for your time. Mr. Smith. I want to talk about, Justice Burkett, you brought up the situation where the Russian mafia guy put the gun into the guy's throat and then ended up not firing the gun. And the only reasonable explanation, he's sending that guy a message, don't snitch at me. I guarantee that he's... He was asking for information. I know the rest of the story. Oh, okay. Sorry. I asked that question because, believe it or not, sometimes criminals act irrationally, and they are not thinking reasonably. And so we can't read too much in. The jury makes a determination based upon the evidence that's presented to them, both direct evidence and circumstantial evidence. And certainly Mr. Nelson's take on it is relevant, but also the trial court who heard and saw the testimony. The trial court interpreted it as well. And although he's not the fact finder, the trial court's observations are important to this court. Okay. You said that because criminals sometimes act irrationally, everyone is entitled to a reasonable doubt standard. Correct. Unless there is evidence, the fact that he's a criminal does not allow the fact finder to then infer all these unreasonable inferences because, oh, he's a criminal, and sometimes criminals act irrationally. So, therefore, he's not entitled to the reasonable doubt standard. I think we get into some problems where we start thinking that he is acting irrationally just based on he's a criminal, and there's nothing really to support it. And, actually, you talked about street justice. The fact that he is a criminal actually supports that he's not interested in the information. It's totally useless. The State just articulated two or three reasons why he would be interested in the information. How do you respond to those arguments? I think the State has to say that because I don't think those make much sense for several reasons. One, Nelson immediately went and told the police that he did this to him. He's not going to join forces with James after he pulled the gun on him, and he did not do that. And what purpose does it have to do with what police department he's working for? And why would he trust the information that he gives? He's under directs. There's a reason why we don't let confessions into the court of law. It's because it's not trustworthy to torture information out of people. And he knows, unless you're a glut for punishment, you're not admitting, yeah, I'm a snitch. No reasonable person would say that, and a reasonable person would not expect that answer. This is like a script. James knows how this is going to end. He knows it's going to be denied, and he doesn't care. He doesn't trust denial. He is sending a message. Do not snitch on me. This was supported by the only person who testified about the altercation, who said it was not a request for information. We need to uphold the beyond reasonable doubt standard. It does not go out the window when you're on appeal. What is a question but for a request for information? It's not a request for information. A question is not a request for information. A rhetorical question is not. And I know we're focusing on that he happened to say it was a question, but it was stated in response to the State's attorney realizing he had not proved his case, and he said this was a question, correct? And he said yes to that. When asked to clarify what he really understood in an open-ended question by the cross-examining trial counsel, he said it was not a request for information. It reminds me of when I do something stupid and my father would look at me and say, what were you thinking? And here's the thing. Maybe my father was asking me, really, I want to know right now what were you thinking, or maybe my father was just exasperated and it was a rhetorical question. He just said, what were you thinking? Get out of here. Well, if he asked what were you thinking? So I think another example is you get caught with your hand in the cookie jar, all right? And he says, slow your hands in the cookie jar. You're eating cookies. He sees that his hand's in the cookie jar, and he's not asking for him to say yes or no. He knows his hand's in the cookie jar. We don't see the cookie jar here. My dad didn't know what I was thinking when I made the stupid decision. He's wanting to know if you have felt guilt for that or any understanding. I don't know what he wanted, and I just wanted to get out of there. All I'm saying is it can be taken two ways. I really want to know what you were thinking, or I don't care what you were thinking. He might want to know actually what you're thinking. James does not care what this guy thinks. He is not going to use the information in any way. Certainly, you made a fine argument today. We thank both parties for the quality of your arguments today. The case will be taken under advisement. A written decision will be issued in due course. Court stands in recess. Thank you.